# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EN FUEGO TOBACCO SHOP LLC, et al. | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 18-cv-01797 (APM) ) |
| UNITED STATES FOOD AND DRUG ADMINISTRATION et al. | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

In an order dated July 2, 2018, the District Court for the Eastern District of Texas transferred this matter to this court under the Fifth Circuit's first-to-file rule. The court in Texas found that there is a "likelihood of substantial overlap" between this case and *Cigar Association of America v. FDA*, which has been pending before this court since July 2016. Plaintiffs are Texas-based stakeholders in the premium cigar industry. They now ask the court to retransfer the case to the Eastern District of Texas, where they originally filed this action. Plaintiffs assert that retransfer is appropriate because there is not substantial overlap between the two cases, and further, because the interests of justice and convenience obligate this court to respect Plaintiffs' choice of forum.

For the reasons that follow, the court declines to retransfer this case. Instead, the court consolidates this matter with *Cigar Association of America v. FDA* and directs the parties to meet and confer and propose a summary judgment briefing schedule.

## II. BACKGROUND

### A. The Deeming Rule

On April 25, 2014, the U.S. Food and Drug Administration ("FDA") issued a Proposed Rule that would make, or "deem," cigars, pipe tobacco, and e-cigarettes subject to the federal Food, Drug, and Cosmetic Act (the "FD&C Act"), 21 U.S.C. §§ 301, et seq., as amended by the Family Smoking Prevention and Tobacco Control Act of 2009 (the "TCA").[1] *See Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act*, *as Amended by the Family Smoking Prevention and Tobacco Control Act; Regulations on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, 79 Fed. Reg. 23,142 (Apr. 25, 2014) ("Proposed Deeming Rule"). In the Proposed Deeming Rule, the FDA announced for consideration two options that "would provide two alternatives for the scope of the deeming provisions and, consequently, the application of the additional specific provisions." *Id.* at 23,143. Under Option 1, the FDA would deem all products meeting the statutory definition of "tobacco product"—including cigars and pipe tobacco but excluding accessories—to be subject to the TCA. *Id.* Under Option 2, the TCA would cover "only a subset of cigars," excluding "from the scope of [the] proposed rule certain cigars that we refer to as 'premium cigars.'" *Id.* To effectuate the carve out for premium cigars, Option 2 proposed to define a "covered cigar" as:

> [A]ny cigar as defined in this part, except a cigar that: (1) Is wrapped in whole tobacco leaf; (2) contains a 100 percent leaf tobacco binder; (3) contains primarily long filler tobacco; (4) is made by combining manually the wrapper, filler, and binder; (5) has no filter, tip, or non-tobacco mouthpiece and is capped by hand; (6) has a retail price (after any discounts or coupons) of no less than $10 per cigar (adjusted, as necessary, every 2 years, effective July 1st, to account for any increases in the price of tobacco products since the last price adjustment); (7) does not have a characterizing flavor other than tobacco; and (8) weighs more than 6 pounds per 1000 units.

---

[1] Hereinafter, for ease of reference, the court refers to the FD&C Act, as amended by the TCA, as the "TCA."

*Id.* at 23,150. As to Option 2, the FDA noted that while "all cigars are harmful and potentially addictive, it has been suggested that different kinds of cigars may have the potential for varying effects on public health, based on possible differences in their effects on dual use, youth initiation[,] and frequency of use by youth and young adults." *Id.* at 23,143. The FDA sought comment on both options.

After receiving and considering comments, on May 10, 2016, the FDA published a final rule "deeming" all categories of cigars subject to the TCA, including premium cigars, pipe tobacco, and certain other products (for example, e-cigarettes), as proposed in Option 1 described above. *See Final Rule Deeming Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, 81 Fed. Reg. 28,974, 29,020 (May 10, 2016) (codified at 21 C.F.R. pts. 1100, 1140, 1143) ("Deeming Rule"). The final Deeming Rule subjects these newly "deemed" products to comparable statutory and regulatory requirements already imposed on cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco. *See id.* In support of its decision to pursue Option 1, the FDA explained that it "[had] concluded that deeming all cigars, rather than a subset, more completely protects the public health." *Id.* The FDA found that: "(1) All cigars pose serious negative health risks, (2) the available evidence does not provide a basis for FDA to conclude that the patterns of premium cigar use sufficiently reduce the health risks to warrant exclusion, and (3) premium cigars are used by youth and young adults." *Id.*

Most significantly for purposes of this litigation, the Deeming Rule mandates that, by August 10, 2018, packaging and advertisements for all cigar products must display one of six pre-approved health warnings statements. *See Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 315

F. Supp. 3d 143, 154 (D.D.C. 2018) (summarizing requirements). The health warnings statements include the following:

> (i) WARNING: Cigar smoking can cause cancers of the mouth and throat, even if you do not inhale.
>
> (ii) WARNING: Cigar smoking can cause lung cancer and heart disease.
>
> (iii) WARNING: Cigars are not a safe alternative to cigarettes.
>
> (iv) WARNING: Tobacco smoke increases the risk of lung cancer and heart disease, even in nonsmokers.
>
> (v)    (A) WARNING: Cigar use while pregnant can harm you and your baby.; or
>
>       (B) SURGEON GENERAL WARNING: Tobacco Use Increases the Risk of Infertility, Stillbirth and Low Birth Weight
>
> (vi) WARNING: This product contains nicotine. Nicotine is an addictive chemical.

*Id.*; 21 C.F.R. § 1143.5(a)(1). These health warnings must be displayed on a rotating basis. *See id.* On cigar packages, the statements "must be randomly displayed in each 12–month period, in as equal number of times as is possible on each brand of cigar sold in product packaging and be randomly distributed in all areas of the United States in which the product is marketed." *Id.* § 1143.5(c)(1). On cigar advertisements, the statements "must be rotated quarterly in alternating sequence in each advertisement for each brand of cigar." *Id.* § 1143.5(c)(2). Each cigar company must submit for FDA approval a plan for rotating warnings twelve months before advertising or commercially marketing a cigar product. *Id.* § 1143.5(c)(3).

In addition to the Deeming Rule, the FDA also promulgated in May 2016 a separate rule, referred to as the "User Fee Rule." That Rule assesses "user fees" on manufacturers and importers

4

of cigars and pipe tobacco, but not other newly deemed products, like e-cigarettes. *See* 21 U.S.C. § 387s; 21 C.F.R. § 1150.

B. **The *Cigar Association* Litigation**

On July 15, 2016, a group of plaintiffs, led by the Cigar Association of America, filed suit in this District Court against the FDA, the United States Department of Health and Human Services ("HHS"), and others. *See* Compl., *Cigar Ass'n of Am. v. FDA*, No. 16-cv-01460 (D.D.C.), ECF No. 1. Plaintiffs in *Cigar Association* are three non-profit associations that represent cigar manufacturers, importers, distributors, suppliers, and consumers, as well as premium cigar and tobacco retail shops (collectively "*Cigar Association* plaintiffs"). The *Cigar Association* plaintiffs' nine-count complaint challenges the Deeming Rule and the User Fee Rule on a host of grounds. Their various claims assert that: (1) the Deeming Rule's timeline for premarket review is arbitrary and capricious under the Administrative Procedure Act ("APA"); (2) the User Fee Rule violates the APA and the Due Process and Equal Protection Clauses; (3) the cost-benefit analysis underlying the Deeming Rule violates the Unfunded Mandates Reform Act and the Regulatory Flexibility Act; (4) the FDA's decision not to select Option 2, which would have excluded premium cigars from the Deeming Rule, is unlawful under the APA; (5) the warning label requirements contravene the APA and the First Amendment; (6) the Rule's treatment of retailers who blend tobacco as "manufacturers" is unlawful under the APA and TCA; and finally, (7) the Rule's classification of pipes as "components" of a tobacco product, as opposed to an unregulated accessory, is arbitrary and capricious under the APA. *Id.* ¶¶ 82–160.

Since its inception, much water has passed under the bridge in *Cigar Association*. Due to regulatory developments that arose after the complaint was filed, the case stood still for six months while the parties attempted to reach some agreement over the contested issues.

Ultimately, the parties elected to litigate two sets of claims on separate tracks. The parties agreed to defer resolving challenges to the premarket review process, the FDA's decision to select Option 1, and the agency's cost-benefit analysis. *See Cigar Ass'n*, 315 F. Supp. 3d at 157–58. The parties agreed to proceed with the remaining claims, the most significant of these being the challenge to the newly adopted warnings requirement. *See id.* at 159–75. Summary judgment briefing did not conclude until December 2017. While the parties' motions were pending, the FDA unexpectedly announced and then initiated rulemaking focused on deciding whether premium cigars should be regulated in the same manner as other categories of cigars. *See id.* at 156–57. That rulemaking process remains ongoing.

On May 15, 2018, the court granted in part and denied in part the *Cigar Association* parties' cross-motions for partial summary judgment. *See id.* at 189. As relevant here, the court ruled that the health warnings requirement was lawful under both the APA and the First Amendment. *See id.* at 159–75. Specifically, as to the First Amendment claim, applying the test set forth in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985), the court held that the health warnings requirement was reasonably related to a substantial government interest and not unduly burdensome. *See Cigar Ass'n*, 315 F. Supp. 3d at 163–74. The court also held that plaintiffs had not properly raised in their complaint a First Amendment prior-restraint challenge to the requirement that the FDA must approve plans to rotate the warning labels. *See id.* at 174–75. Finally, the court ruled that it was unable to address whether the FDA's decision to regulate premium cigars was arbitrary and capricious, notwithstanding the agency's recent announcement that it was seeking additional information about regulating premium cigars, because the *Cigar Association* plaintiffs had opted to defer litigating that issue. *Id.* at 175–77.

Thereafter, to enable an immediate appeal, the court entered judgment in favor of Defendants as to those claims challenging the warnings requirement. The court enjoined enforcement of the requirement pending the outcome of the appeal. *See Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 317 F. Supp. 3d 555, 563–64 (D.D.C. 2018). That aspect of *Cigar Association* remains before the D.C. Circuit. *See Cigar Ass'n of Am. v. FDA*, 18-5195 (D.C. Cir.).

### C. The *En Fuego* Litigation

Plaintiffs in the instant case include three entities: (1) En Fuego Tobacco Shop LLC, "a premium cigar retailer and lounge with locations" around Texas; (2) Cuba Libre Enterprises LLC (doing business as El Cubano Cigars), "a manufacturer of handmade premium cigars" based in Texas; and (3) the Texas Cigar Merchants Association, "a Texas-incorporated not-for profit association representing premium cigar manufacturers and retailers in the State of Texas." Am. Compl., ECF No. 20 [hereinafter Am. Compl.], ¶¶ 20–22 (collectively, "Plaintiffs"). They brought this action in January 2018 in the District Court for the Eastern District of Texas against the FDA and its Commissioner, and HHS and its Secretary (collectively, "Defendants"), challenging the Deeming Rule on various grounds as it applies to premium cigars. *See generally* Compl., ECF No. 1; *see also* Am. Compl. Plaintiffs' Amended Complaint contains eight counts. Taken together, those counts challenge (1) the Deeming Rule's health warnings mandate under the First Amendment, the TCA, and APA; (2) the Rule's warnings plan pre-approval requirement under the First Amendment; and (3) the Rule itself under the Appointments Clause. Am. Compl. ¶¶ 64–149.

On March 19, 2018, Defendants filed a motion to transfer *En Fuego* to this court based on the Fifth Circuit's "first-to-file rule." *See* Mot. to Transfer, ECF No. 18. Shortly thereafter, Plaintiffs filed a Motion for Summary Judgment. *See* Mot. for Summ. J., ECF No. 22. On May

7

22, 2018, Magistrate Judge Kimberly C. Priest Johnson denied the Motion to Transfer, *see* Order, ECF No. 35, which Defendants then appealed to District Judge Amos Mazzant, *see* Defs.' Objections, ECF No. 40. The parties then completed summary judgment briefing and held oral argument in the case. Pls.' Mot. to Retransfer, ECF No. 73 [hereinafter Pls.' Mot.], Mem. in Supp., ECF No. 73-1 [hereinafter Pls.' Mem.], at 4–5.

But the court in Texas never reached the merits. Instead, on July 2, 2018, Magistrate Judge Johnson withdrew the Order Denying Transfer and issued a new order granting the Motion to Transfer. *See generally* Order, ECF No. 55 [hereinafter Transfer Order]. She determined "that the present lawsuit and *Cigar Association* involve common subject matter and core issues that substantially overlap." *Id.* at 6. Plaintiffs then appealed the order to the District Court judge. Judge Mazzant affirmed Magistrate Judge Johnson's decision, holding that there was a "likelihood of substantial overlap" warranting transfer. *See* Order Denying Defendants' "Emergency Appeal," ECF No. 60, at 4 (quotation and citation omitted).

Following the transfer, Plaintiffs filed the instant motion on October 1, 2018, asking this court either to retransfer the case back to the District Court for the Eastern District of Texas or, in the alternative, to refuse to consolidate it with *Cigar Association*. Pls.' Mem. at 1–2.

## III. DISCUSSION

Because "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously," *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980), many circuits apply what is commonly known as the first-to-file rule. The D.C. Circuit has framed the rule in this way: "[W]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its

conclusion first." *Id.* (internal quotation marks and citations omitted). "The rationale for allowing the first court to proceed to its disposition" is so that the second court will not "expend judicial resources—and potentially produce contradictory decisions—by allowing the same [ ] plaintiff multiple bites at the apple." *See also UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012).

Like the D.C. Circuit, the Fifth Circuit has developed its own first-to-file jurisprudence. *See Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971). Under Fifth Circuit law, a court must first determine if there is a likelihood that the second-filed case will "substantial[ly] overlap" with the first. *Id.* at 408. However, "neither the issues nor the parties" must be "identical to those in the Original Action" for the first-to-file principle to apply. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). If a substantial overlap exists, trial courts in the Fifth Circuit are directed to "stay[ ], dismiss[ ], or transfer[ ]" the second-filed action in deference to the first. *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 730 (5th Cir. 1985). It is pursuant to Fifth Circuit precedent that the court in Texas transferred this matter to this District Court. *See* Transfer Order at 6.

A. **Review of the First-to-File Transfer**

Plaintiffs are somewhat schizophrenic in their argument as to why this court should retransfer this matter. In one breath, Plaintiffs argue that the court should reanalyze the first-to-file inquiry under D.C. Circuit precedent, which they insist demands strict identity of parties and claims. *See* Pls.' Mem. at 10 (arguing that "the authority governing this Court's discretion is much tighter than in the Fifth Circuit" and the *En Fuego* case "fails" the D.C. Circuit's first-to-file standard); *see also* Pls.' Reply in Support of Pls.' Mot., ECF No. 76 [hereinafter Pls.' Reply], at 3–7. Yet, in the next breath, Plaintiffs seem to argue that the court must conduct essentially a

9

de novo review of whether *En Fuego* and *Cigar Association* "substantially overlap," applying Fifth Circuit law. *See* Pls.' Mem. at 6 (arguing that, under Fifth Circuit law, following the initial transfer, "it is then for the first court to make the 'ultimate determination' of whether the overlap is sufficient to justify retaining the case in that court or it instead should be sent back to the court in which it was filed"). Having reviewed the applicable authorities, the court does not believe its task is to make either of those determinations.

Plaintiffs' assertion that this court should analyze the retransfer motion under D.C. Circuit law is not only unfounded, but is also inconsistent with D.C. Circuit precedent on retransfers. Plaintiffs cite no authority for the proposition that, after receiving a second-filed transferred case, a district court in this jurisdiction must apply D.C. Circuit first-to-file principles in determining whether to retransfer the case. The main case on which Plaintiffs rely—*National Industries for the Blind v. Department of Veterans Affairs*, 296 F. Supp. 3d 131 (D.D.C. 2017), *see* Pls'. Mem. at 10; Pls.' Reply at 3–4—is inapposite, as it involves a first-to-file transfer decision made in the first instance by a judge of this District Court. The D.C. Circuit's first-to-file cases likewise do not involve a motion to retransfer. *See, e.g., Washington Metro. Area Transit Auth.*, 617 F.2d at 829 (affirming dismissal of a second-filed action to enforce a contract where the court of the first-filed action was "capable of making [a] determination" regarding the contract's interpretation); *UtahAmerican*, 685 F.3d at 1123–24 (reviewing district court decision not to follow first-to-file rule); *Columbia Plaza Corp. v. Sec. Nat. Bank*, 525 F.2d 620, 626–27 (D.C. Cir. 1975) (same).

Although the D.C. Circuit has said little about retransfer motions, the available guidance does not support repeating the first-to-file analysis under D.C. Circuit precedent. In *Hill v. Henderson*, the Circuit stated that "at the time of a motion to retransfer[,] the transfer order would be law of the case binding the second district court (in the absence of clear error or manifest

injustice) . . . ' " 195 F.3d 671, 677 (D.C. Cir. 1999). That rule echoes the Supreme Court's observation in *Christianson v. Colt Industries Operating Corp.*, that "[f]ederal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." 486 U.S. 800, 816 (1988). The notion that this court must conduct a first-to-file analysis from scratch under D.C. Circuit precedent cannot be reconciled with the Circuit's direction to treat transfer orders as "law of the case."

Nor is this court obligated to perform a de novo review of the Texas federal court's decision under the Fifth Circuit's first-to-file law. For one, conducting such a review would be contrary to the D.C. Circuit's admonition that "unless exceptional circumstances appear, the transferee court should not directly review the transfer order." *In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc) (observing that "it is well established that a transferee court cannot directly review the transfer order itself"). Plaintiffs' proposed approach, on the other hand, would permit transferee courts "to review transfer decisions of a coordinate court[, and could] threaten to send litigants into a vicious circle of litigation." *Christianson*, 486 U.S. at 816.[2]

Moreover, Plaintiffs' request that this court "pick up the analysis where the Texas district court left off," Pls.' Mem. at 2, overstates the transferee court's role in the first-to-file analysis under Fifth Circuit law. Plaintiffs' understanding rests largely on a portion of the Fifth Circuit's decision in *Mann*, in which the court stated that "the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits" rests with the transferee

---

[2] It may be appropriate to order a retransfer, however, if changed circumstances have frustrated the original purpose of the transfer. *See Scarborough v. Nat'l Ass'n of Sur. Bond Producers*, 474 F. Supp. 2d 64, 71 (D.D.C. 2007); *see also* Wright & Miller, § 3846, Effect of Transfer, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ("A motion to retransfer is perfectly appropriate, however, on a showing of changed circumstances, particularly when such developments would frustrate the purpose of the change of venue."). But the parties point to no such changed circumstances here.

court, *Mann*, 439 F.2d at 408. *See* Pls.' Mem. at 6 (citing *Mann*'s "ultimate determination" language). Plaintiffs apparently read that text to mean that this court must independently determine whether the two cases "lack[] the actual overlap that would justify [*En Fuego*'s] retention in this court." *Id*. at 2. But *Mann* itself and subsequent Fifth Circuit cases clarify that the transferee court's main function is to determine how the second case should proceed in that court after it has been transferred, not to reapply first-to-file principles and potentially override the transferor court. In a footnote, the court in *Mann* stated that "regardless of whether or not the suits here are identical, if they overlap on the substantive issues, . . . the [transferee] court is the proper forum to determine if the [second] suit . . . actually overlaps to the extent *requiring consolidation*." *Mann*, 439 F.2d at 408 n.6. (emphasis added). A later Fifth Circuit case, *Sutter Corp. v. P&P Industries, Inc.*, confirms that the circuit's first-to-file jurisprudence simply designates where decision-making is to take place about a second-filed case. 125 F.3d 914, 920 (D.C. Cir. 1997) (stating that "the 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated"). Thus, the function of the transferee court is not to reassess whether there is "substantial overlap" justifying retention under the Fifth Circuit's first-to-file principles; rather, its role is to decide the fate of the second-filed case as it deems appropriate. The court therefore declines to retransfer this case on the ground that it does not "substantially overlap" with *Cigar Association*.

  **B.**  **Whether Consolidation of *En Fuego* and *Cigar Association* is Appropriate**

  Having now received the *En Fuego* matter, this court's principal inquiry is to decide whether to consolidate *En Fuego* with *Cigar Association* or allow the two cases to proceed on separate tracks. *See Sutter Corp.*, 125 F.3d at 914, 920; *Mann*, 439 F.2d at 408 n.6. Rule 42 of

the Federal Rules of Civil Procedure governs the question of consolidation. Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy." *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). Efficiency cannot, however, "prevail at the expense of justice—consolidation should be considered when 'savings of expense and gains of efficiency can be accomplished *without sacrifice of justice.*'" *Id.* (quoting *Consorti v. Armstrong World Ind.*, 72 F.3d 1003, 1007 (2d Cir. 1995) (emphasis in original); *see also Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009) (citing *Devlin*).

Here, the court finds that there are sufficient "common question[s] of law or fact" to warrant consolidating this case with *Cigar Association*. Fed. R. Civ. P. 42(a). *Cigar Association* and *En Fuego* "share basic relevant facts." Both cases involve the same administrative record concerning promulgation of the Deeming Rule's health warnings requirement, which will serve as the court's primary, if not exclusive, source of facts to decide the presented legal issues.[3] The "operative facts" are therefore the same. *See Steele v. United States*, No. CV 14-1523, 2015 WL 4121607, at *2 (D.D.C. June 30, 2015) (finding consolidation appropriate where there were "similar operative facts" involving government actions); *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 287 (D.D.C. 2011) (finding consolidation appropriate where the cases involved "the same administrative record").

---

[3] The court recognizes that the *En Fuego* plaintiffs are of the view that the court can consider extra-administrative record evidence in deciding their constitutional challenges. Even if that position is correct, it does not alter the conclusion that the two cases share a common factual basis.

More importantly, several of the claims and contentions of the parties in *Cigar Association* and *En Fuego* overlap. *See* Defs.' Opp. at 5. Both groups of plaintiffs attack the Deeming Rule's health warnings requirement as unconstitutionally compelled speech in violation of the First Amendment. *Compare En Fuego* Counts II, III, Am. Compl. ¶¶ 64–96 *with Cigar Ass'n of Am.* Count VII, Compl. ¶¶ 142–48. Both also assert that the warnings requirement violates the APA and TCA. *Compare En Fuego* Counts V, VI, Am. Compl. ¶¶ 108–29 *with Cigar Ass'n of Am.* Count VI, Compl. ¶¶ 134–41. Indeed, the court already has addressed, to some degree, these contentions in its *Cigar Association* decision, a part of which is now before the D.C. Circuit. *See Cigar Ass'n*, 315 F. Supp. 3d at 162–63 (rejecting challenge under the APA), 163–74 (rejecting challenge that the warnings requirement is unconstitutionally compelled commercial speech).

To be sure, there are differences between the claims and theories asserted by the *En Fuego* and *Cigar Association* plaintiffs. Most significantly, unlike the *Cigar Association* plaintiffs, the *En Fuego* plaintiffs do not concede that "the content of the warnings is [ ] purely factual and uncontroversial as applied to premium cigars." Am. Compl. ¶¶ 64–72; Pls.' Mem. at 4, 8–9. In other words, the *En Fuego* plaintiffs believe that the warnings regime is subject to strict scrutiny or at least intermediate scrutiny under *Central Hudson*. Am. Compl. ¶ 66; *see also RJ Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1217 (D.C. Cir. 2012), *rev'd on other grounds by American Meat Inst. v. U.S. Dep't of Agriculture*, 760 F.3d 18, 22 (D.C. Cir. 2014) (en banc). Additionally, the *En Fuego* plaintiffs advance an argument that the *Cigar Association* plaintiffs deferred: that the FDA acted arbitrarily and capriciously by subjecting premium cigars to the same warnings requirement as other cigar products. *Compare En Fuego*, Am. Compl. ¶ 121 *with Cigar Ass'n of Am.*, Compl. ¶¶ 125–133. Finally, the *En Fuego* plaintiffs assert claims that the *Cigar Association*

plaintiffs do not. Specifically, they maintain that (1) the warnings plan pre-approval requirement constitutes an unconstitutional prior restraint; (2) promulgation of the Deeming Rule by a career FDA employee violated the Appointments Clause and the APA; and, perhaps, (3) the FDA's failure to stay the warnings requirement pending the ongoing rulemaking process concerning premium cigars was arbitrary and capricious. *See* Am. Compl. ¶¶ 97–107, 130–49.[4] The foregoing differences do not, however, diminish the commonality of the legal issues presented in both cases. At their core, both cases involve constitutional and administrative law challenges to the FDA's decision to require cigar products to carry health warnings. The fact that one set of plaintiffs advances different claims or theories does not, without more, defeat the benefits of a single judge deciding related challenges. *See Nat'l Ass'n of Mortg. Brokers*, 770 F. Supp. 2d at 287 (ordering consolidation despite one plaintiff bringing a narrower challenge to an agency action than another plaintiff); *Hanson*, 257 F.R.D. at 21–23 (D.D.C. 2009) (holding the same with respect to challenges to District of Columbia gun laws).

Plaintiffs also argue that consolidation is inappropriate because of the different postures of the *En Fuego* and *Cigar Association* litigations. *See* Pls.' Mem. at 11. It is true that the two cases are in different places. A portion of *Cigar Association* has been resolved and certain rulings are on appeal. *En Fuego*, by contrast, is fully briefed, yet remains unresolved on the merits. In other circumstances, these differences might warrant non-consolidation. But here, both cases involve cross-motions for summary judgment largely on an administrative record. There is no real gain or loss of efficiency by consolidating the matters, as opposed to keeping them on separate tracks. Indeed, consolidation does not extinguish the independent nature or status of different cases and

---

[4] As to the last of these claims, it is not obvious to the court which count of the Amended Complaint asserts that the FDA acted in violation of the APA by insisting that the warnings requirement go into effect while the FDA accepts comments about regulating premium cigars. Plaintiffs' motion cites to paragraphs 130 to 149 of their Amended Complaint, *see* Pls.' Mem. at 9, but those paragraphs assert violations of the Appointments Clause.

therefore permits the court to treat them individually. *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1327 (2016) ("[A]ctions do not lose their separate identity because of consolidation.") (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2382, p. 10 (3d ed. 2008)). In short, notwithstanding their different postures, consolidating *En Fuego* and *Cigar Association* is appropriate under Rule 42(a), because both involve common questions of law and fact.

### C. Whether to Stay the *En Fuego* Matter

Having decided to retain this matter and consolidate it with *Cigar Association*, the court now turns to Defendants' request that the court stay these proceedings pending the outcome of the appeal in *Cigar Association*. *See* Defs.' Opp. at 14–17. The court will not issue a stay. Defendants did not move to stay this matter, but rather introduced the request in their Opposition to Plaintiffs' Motion to Retransfer. *See id.* For that reason alone, the court denies the requested stay.

Nor is a stay otherwise warranted. Defendants argue that the court should stay this case because the "D.C. Circuit's decision in *Cigar Association* will likely control the outcome of the central claims raised in this case." *Id.* at 14. Perhaps it will; perhaps it won't. Whatever the outcome of the D.C. Circuit proceedings, it would be patently unfair to the *En Fuego* plaintiffs to further delay reaching the merits of their challenges. They have waited long enough, having filed this action nearly one year ago. Moreover, as Plaintiffs point out, staying this matter could put them in the difficult position of having to litigate this case on an expedited basis if the D.C. Circuit rules against the *Cigar Association* plaintiffs on appeal, as a negative ruling would start the clock on dissolving the present stay of the warnings requirement. In the face of this risk to Plaintiffs, Defendants have shown no hardship attendant to moving forward. *See Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936) (stating that "the suppliant . . . must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which

[the movant] prays will work damage to some one else"; "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

Accordingly, the court finds no compelling reason to stay this matter until resolution of the appellate proceedings in *Cigar Association*.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Retransfer to the District Court for the Eastern District of Texas or, in the Alternative, to Set for Non-Consolidated Adjudication on the Merits Before this Court is denied. This court will retain this matter and it shall be consolidated with *Cigar Association of America v. FDA*, Case No. 1:16-cv-01460-APM. The *En Fuego* parties shall make all future filings on the *Cigar Association* docket.

No later than January 25, 2019, the parties shall submit a Joint Status Report recommending a schedule for further proceedings, including oral argument on the cross-motions. Upon entering a scheduling order, unless the parties indicate otherwise, the court will deem moot Plaintiffs' pending motion for summary judgment filed at ECF No. 22.

Dated: January 11, 2019
Amit P. Mehta
United States District Judge